Filed 10/26/15  In re L.E. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re L.E., a Person Coming Under the Juvenile Court Law. | |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>A.W.,<br><br>    Defendant and Appellant. | C078911<br><br>(Super. Ct. No. JD233617) |

A.W., mother of the minor, appeals from orders terminating her parental rights. (Welf. & Inst. Code, §§ 366.26, 395[1].)  Mother contends the record shows there was no inquiry by the juvenile court or the Sacramento County Department of Health and Human Services (Department) into father's possible Indian heritage.  Mother also argues the

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

1

court erred in failing to apply the beneficial parental relationship exception to avoid termination of her parental rights. We conclude (1) the Department satisfied its statutory duty of inquiry and (2) the juvenile court properly found the beneficial parental exception did not apply. Accordingly, we affirm the juvenile court's orders.

FACTS

The eight-year-old minor was removed from parental custody in August 2013 because of domestic violence and mother's substance abuse. The court sent notice of the jurisdictional/dispositional hearing to the minor's father, R.E., by certified mail. The mailing also included, inter alia, a Parental Notification of Indian Status, form ICWA-020. The return receipt was signed by R.E. Mother filed her ICWA-020 form in August 2013 disclaiming Indian ancestry. The court found that, as to mother, the Indian Child Welfare Act (25 U.S.C. § 1901, et seq.) (ICWA) did not apply but made no finding as to R.E.

The jurisdiction report stated the social worker had spoken to mother who minimized the issues that led to removal but nonetheless began to participate in the services offered to her. The minor told the social worker she did not want to go home. During a telephone contact, mother began yelling at the minor and told the minor she was not going to try to get her back. The minor was very upset by the call. After receiving notification from the Department that the minor was in protective custody, R.E. called the Department and said he was unable to take custody of the minor at that time and wanted her placed with the paternal grandmother. In a phone interview a few days later, R.E. stated he is the biological father of the minor and holds her out to be his daughter. While he did not have suitable housing to accommodate her, he stated he would like the opportunity to reunify with the minor in the future. He reported that he always had concerns with the minor's safety in the care of mother but was not in a position to intervene due to his own substance abuse and prior incarceration. An addendum stated R.E. had not demonstrated any commitment to establishing a relationship with the minor.

2

He had not visited or made efforts to arrange visitation and had not presented himself at any of the court proceedings. The Department opined it was not in the best interest of the minor to provide reunification services to father. In October 2013, the juvenile court sustained the petition and ordered reunification services for mother.

The review report filed in March 2014 stated mother was not participating in services, had attended eight visits from mid-November through mid-February, cancelled three visits during that period and was frequently late to the visits she did attend. Mother attended no visits from mid-February to the writing of the report in mid-March. In January 2014, R.E. called the Department and left a message that he wanted to give up his parental rights. However, his phone number was disconnected when the social worker tried to call him. The report stated R.E.'s needs could not be addressed because he had not made contact with the Department since the inception of the case. The juvenile court ordered further reunification services for mother.

The review report of September 2014 recommended termination of mother's reunification services. The report stated the minor remained in foster care placement and appeared to have bonded to her caretakers. However, the minor was resistant to being adopted by her caretakers and expressed a wish to be placed with relatives. The minor was in therapy to address issues including neglect, trauma, and mother's inconsistent visits. The inconsistent visits upset the minor and caused problems in her placement. Mother did not engage in services or make herself available to the social worker. In November 2014, the juvenile court adopted the Department's recommendation, terminating mother's services and setting a section 366.26 hearing.

The assessment for the section 366.26 hearing stated mother attended six of eight possible visits in November and December of 2014 and visits went fairly well. When the case was transferred to adoptions, visits were reduced to twice a month. The assessment concluded the minor was generally adoptable and was now comfortable with the plan of adoption. The social worker reported the minor cared about her mother but understood

mother was unable to take care of her properly. The social worker concluded severance of the minor's relationship with mother would not cause the minor significant emotional harm.

At the section 366.26 hearing in March 2015, mother objected to termination of her parental rights and asked the court to find the beneficial parental relationship exception applied. The juvenile court declined to find the exception had been established both because there was a lack of consistent visitation and insufficient evidence that severing the parent-child bond would be detrimental to the minor. The court found the minor was likely to be adopted and terminated mother's parental rights.

DISCUSSION

I

*ICWA Inquiry as to R.E.*

Mother contends the court failed to make any finding whether or not the ICWA applied as to R.E. and further contends the record reflects a complete failure to inquire into father's Indian heritage.

Section 224.3, subdivision (a), provides: "The court, county welfare department and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . is to be, or has been, filed is or may be an Indian child in all dependency proceedings . . . if the child is at risk of entering foster care or is in foster care."

The record shows an ICWA-020 form was mailed to R.E. at the outset of the dependency case and that he received the form. The purpose of the form is to make initial inquiry of parents regarding their Indian ancestry for further inquiry to be made in order to give notice of the proceedings to any indicated tribe. The court satisfied the statutory duty of inquiry in section 224.3, subdivision (a).

The record does not contain an ICWA-020 form completed by R.E. We conclude, based on the record, he did not complete the form and return it to the Department or the

4

juvenile court. Following that first contact and initial interview, R.E. did not make himself available to the social worker who was, therefore, unable to make any further inquiry.[2] He also did not attend any court proceedings.

Lacking any information about R.E.'s Indian heritage, if any, the juvenile court could not, and did not, make any finding regarding the application of ICWA as to him.

## II

### *Beneficial Parent-Child Relationship Exception*

Mother asserts the court erred in failing to apply the beneficial parent-child relationship exception to avoid termination of her parental rights. We disagree.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption*. [Citation]' [Citation] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.) There are only limited circumstances that permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to termination of parental rights. (*In re Cristella C.* (1992) 6 Cal.App.4th 1363, 1373; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(4); Evid. Code, § 500.)

---

[2] Mother asserts the Department had access to and could have contacted the paternal grandparents about Indian heritage. However, the duty to further inquire of relatives exists only if there is reason to know the minor is an Indian child. (§ 224.3, subd. (c).) Here, the social worker had no duty to inquire of the paternal grandparents because there was no reason to know an Indian child may be involved.

Termination of parental rights may be detrimental to the minor when: "The parents . . . have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) However, the benefit to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; *In re C.F.* (2011) 193 Cal.App.4th 549, 555.) Even frequent and loving contact is not sufficient to establish this benefit absent a significant positive emotional attachment between parent and child. (*In re I.R.* (2014) 226 Cal.App.4th 201, 213.)

Based on the record, mother could not meet her burden to establish regular visitation. In 2013 and early 2014, mother cancelled three visits and was late to the visits she did attend. Subsequently, she attended no visits in March 2014 and visited inconsistently thereafter.

Even were we to assume regular visitation, mother did not show that severing the parent-child relationship would deprive the minor of a substantial positive emotional attachment. The record shows that, while some visits went well, there were also contacts that did not, including the telephone call in which mother yelled at the minor and told the minor she was not going to try to get her back. The minor's therapy sessions addressed, in part, the minor's reaction to mother's inconsistent visits. The minor cared for her mother but there was no evidence she would be greatly harmed by termination of mother's parental rights. The juvenile court properly found the exception to termination of parental rights did not apply.

DISPOSITION

The orders of the juvenile court are affirmed.

_____/s/_____
HOCH, J.

We concur:

_____/s/_____
NICHOLSON, Acting P. J.

_____/s/_____
DUARTE, J.